Opinion for the Court filed by Circuit Judge ROBERTS.
Dissenting opinion filed by Circuit Judge GARLAND.
ROBERTS, Circuit Judge:
Relator Edward Totten brought a qui tam action against Bombardier Corporation and Envirovac, Inc., alleging that those companies violated the False Claims Act, 31 U.S.C. § 3729, by delivering allegedly defective rail cars to the National Railroad Passenger Corporation (Amtrak) and submitting invoices to Amtrak for payment from an account that included federal funds. The pertinent provision of the Act imposes liability for civil penalties and treble damages on anyone who “knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval.” Id. § 3729(a)(1). Amtrak is not the Government, 49 U.S.C. § 24301(a)(3), and Totten alleged only that the funds Amtrak used to pay Bombardier and Envirovac came in part from the Government — not that those companies presented their claims to an officer or employee of the Government. The district court accordingly dismissed Totten’s complaint. We agree that under the plain language of Section 3729(a)(1), claims must be presented to an officer or employee of the Government before liability can attach. We therefore affirm.
I.
This is Totten’s second appeal in this case; the facts are summarized in our opinion in the first, United States ex rel. Totten v. Bombardier Corp., 286 F.3d 542, 545 (D.C.Cir.2002) (Totten T):
The dispute giving rise to this case began when Amtrak contracted with two private companies, Bombardier Corporation and Envirovac, Inc. (“the Contractors”), to supply rail cars with new toilet systems for its trains. Bombardier makes the cars and Envirovac makes the toilets. Specifications for the toilet systems were incorporated into Amtrak’s contracts with the Contractors. On March 16, 1998, Totten, a former Amtrak employee, filed a suit against the Contractors under the [False Claims Act], alleging that they had supplied unsuitable parts that did not meet the contractual specifications.
*491 According to Totten’s amended complaint, Bombardier and Envirovac are liable under the False Claims Act because they submitted periodic invoices to Amtrak for noncompliant rail cars and Amtrak paid the invoices with funds that included federal grant money.
The district court dismissed the complaint at the threshold, concluding that 49 U.S.C. § 24301(a) — which states that Amtrak “shall not be subject to title 31” — bars False Claims Act suits that involve claims made to Amtrak. United States ex rel. Totten v. Bombardier Corp., 139 F.Supp.2d 50, 54 (D.D.C.2001). This court reversed and remanded, holding that Section 24301(a) is not a bar to False Claims Act suits against those who submit claims to Amtrak: in such cases, we reasoned, it is the claimant — not Amtrak — that is rendered “subject to” the Act. Totten I, 286 F.3d at 548, 550. The court in Totten I “expressed] no opinion” on another threshold question in the case: “whether [a False Claims Act] plaintiff may prevail against a defendant who submits a false ‘claim’ to a federal grantee (such as Amtrak), without presenting evidence that the claim was ever actually submitted to the U.S. government.” Id. at 553.
That question was the focus of the district court’s inquiry on remand, after Tot-ten amended his complaint. The court again dismissed the action, noting that the amended complaint alleged only that “the allegedly false claims in this case were presented to and paid by Amtrak, not that the false claims were presented to any federal officer or employee.” United States ex rel. Totten v. Bombardier Corp., No. 98-0657, Mem. op. at 7, 2003 WL 22769033 (D.D.C. Sept. 3, 2003). The district court recognized that 31 U.S.C. § 3729(c) defines “claim” under the Act to include claims made to a grantee if the Government provides all or part of the money to pay the claim, but noted that “Congress nevertheless did not remove the unambiguous language requiring presentment to the United States” in Section 3729(a)(1). Id. at 5, *2. Totten now appeals, and the Government has filed briefs and argued as amicus curiae in support of Totten.[1]
II.
A. Amtrak is Not the Government
Totten •— but not the Government — argues that the allegedly false claims in this case were presented to the Government, because Amtrak was a mixed-ownership government corporation prior to December 1997 and the Government has continued to hold all of Amtrak’s preferred stock, and has provided sizable subsidies to Amtrak, since that date. Tot-ten Br. at 6. This argument is unavailing.[2]
Even prior to 1997 — indeed, at all times since the company was created in 1971 — Amtrak’s organic statute has flatly stated that the company “is not a department, agency, or instrumentality of the United States Government.” 49 U.S.C. § 24301(a)(3); see also Totten I, 286 F.3d at 544. In its brief, the Government candidly concedes that “Congress has speci *492 fied that Amtrak is not itself an agency of the Government.” Amicus Br. at 10. And in a case involving the provision that is now Section 24301, the Supreme Court deemed the statute “assuredly dispositive of Amtrak’s status as a Government entity for purposes of matters that are within Congress’s control.” Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 392, 115 S.Ct. 961, 971, 130 L.Ed.2d 902 (1995); see also Totten I, 286 F.3d at 544-45 (citing Lebrón). Totten offers no reason, and we can think of none, why False Claims Act coverage is not a matter “within Congress’s control.”
The case on which Totten relies, Rainwater v. United States, 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996 (1958), is clearly distinguishable. Rainwater held that the Commodity Credit Corporation was “part of ‘the Government of the United States’ for purposes of the False Claims Act,” id. at 592, 78 S.Ct. at 948-49 but as the Court noted, the statute in that case expressly provided that the Corporation was “an ‘agency and instrumentality of the United States.’ ” Id. at 591, 78 S.Ct. at 948 (quoting Commodity Credit Corporation Charter Act, Pub. L. No. 80-806, § 2, 62 Stat. 1070 (1948)). Amtrak’s statute, of course, gives Amtrak the exact opposite status. Attempts to analogize the other facts in Rainwater — that all of the Commodity Credit Corporation’s employees were employees of the U.S. Department of Agriculture, and that the entire budget of the Corporation came from the federal treasury, see id. — are similarly fruitless.
B. Section 3729(a)(1) Requires Presentment to an Officer or Employee of the Government
1. Totten, now with the support of the Government, advances an alternative argument: that a claim submitted to Amtrak is effectively a claim presented to the Government. Thus Totten asserts that “the [False Claims Act] covers claims presented to grantees,” Totten Br. at 21; see also Reply Br. at 2, and relies on dicta from United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 738 (D.C.Cir.1998), which suggest that claims presented to grantees may be considered “ ‘effectively’ presented to the United States” if the claims are paid with funds the grantee received from the Government. See Totten Br. at 13; see also Amicus Br. at 18 (quoting Yesudian).
Totten and the Government are unable to refute Envirovae’s argument that their reading of the statute would “write the clear unambiguous language of Section 3729(a)(1) entirely out of the Act.” Envirovac Br. at 9; see also Bombardier Br. at 10-11. Liability under Section 3729(a)(1) arises when any person “knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval,” 31 U.S.C. § 3729(a)(1) (emphasis added); Totten and the Government offer no plausible explanation for how presentment of a claim to Amtrak can satisfy the clear textual requirement that a claim be presented to a federal officer or employee. Instead, they shift to a textual argument of their own, arguing that a presentment requirement in Section 3729(a)(1) would be “inconsistent with the plain language of [Section] 3729(c).” Amicus Br. at 9; see also Reply Br. at 2.
Section 3729(c) defines a claim to include a request or demand for payment made to a grantee “if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse ... [the] grantee ... for any portion of the money or property which is requested or demanded.” 31 U.S.C. § 3729(c). A presentment requirement in Section 3729(a)(1), the argument goes, would mean that False *493 Claims Act liability for claims submitted to grantees would attach only if the claims are presented for reimbursement, and thus would “render[ ] the first ‘if clause meaningless.” Amicus Br. at 13.
Not at all. It is quite easy to square the language of Section 3729(c) — including both “if’ clauses — with the presentment requirement in Section 3729(a)(1). The first “if’ clause defines a claim to include claims submitted to grantees if the Government “provides” any portion of the funds used to pay the claim. In a rhetorical sleight of hand, the Government urges that this clause must reach any claim where the money “has already been or is being provided by the Federal Government.” Id. (emphasis added). Such a reading equates the present-tense “provides” in the statute with the past-tense “has provided” in the argument — and thereby runs afoul of the Supreme Court’s admonition that “Congress’ use of a verb tense is significant in construing statutes.” United States v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 1353-54, 117 L.Ed.2d 593 (1992).
The word “provides” in Section 3729(c), when appropriately limited to the present tense, squares neatly with a presentment requirement. False Claims Act liability will attach if the Government provides the funds to the grantee upon presentment of a claim to the Government. Liability will also attach if, after the grantee presents the claim, the Government provides the funds directly to the claimant: the first “if’ clause of subsection (c) — unlike the second — does not circumscribe the set of possible recipients of the federal funds. And under the second “if’ clause, liability will attach if the Government — again, upon presentment of the claim — reimburses the grantee for funds that the grantee has already disbursed to the claimant. Nothing about the language of subsection (c) requires ignoring that of subsection (a)(1) to make sense of the statute.[3]
Indeed, Totten and the United States never connect the dots in their argument based on subsection (c). Whatever that argument may show about what constitutes a “claim,” it does not respond to the plain requirement of subsection (a)(1) that, to be actionable under the False Claims Act, any such claim must be presented to an officer or employee of the United States Government. As Judge Randolph noted in Totten I, it is clear on the face of the statute that “no matter how ‘claim’ is defined, subsection (a)(1) requires the alleged false claimant to present it (or cause it to be presented) to a federal officer or employee.” 286 F.3d at 554 (Randolph, J., concurring).
2. In Yesudian, the court considered the present question, but expressly concluded that it “need not resolve that question today.” 153 F.3d at 739. That was because the issue in Yesudian was not liability under the False Claims Act for false claims, but whether an employer retaliated against an employee for filing a qui tarn action under the Act. Such re *494 taliation, the Yesudian court concluded, could be shown without establishing that the qui tam plaintiff would have prevailed in his suit. Id.; see Totten I, 286 F.3d at 546 (“Neither this court nor the Supreme Court has definitively explicated the complex relationship between the definition clause in § 3729(c) and the presentment clause in § 3729(a)(1);” Yesudi-an “declined to answer” the question). The Yesudian court noted that the statutory language could be read to require presentment to the United States, but also surmised — relying on the legislative history of the 1986 amendments to the False Claims Act, see 153 F.3d at 737-39 ■ — ■ that it was “also possible to read the language to cover claims presented to grantees, but ‘effectively’ presented to the United States because the payment comes out of funds the federal government gave the grantee,” id. at 738. Now that the question is which interpretation is correct, as opposed to whether either is arguable, we adhere to the plain language of the statute, rather than invoke the legislative history to embrace a reading at odds with the statutory text.
As an initial matter, the Supreme Court reiterated as recently as this past Term that resort to legislative history is not appropriate in construing plain statutory language. “[WJhen the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms.” Lamie v. United States Tr., 540 U.S. 526, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000)); see also Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655, 662-63, 126 L.Ed.2d 615 (1994) (courts should “not resort to legislative history to cloud a statutory text that is clear”); Davis v. Michigan Dep’t of Treasury, 489 U.S. 803, 808-09 n. 3, 109 S.Ct. 1500, 1504-05 n.3, 103 L.Ed.2d 891 (1989) (“Legislative history is irrelevant to the interpretation of an unambiguous statute.”).
Totten and the United States do not suggest that the language of Section 3729(a)(1) is somehow not plain; they merely argue that a plain language reading would yield results at variance with the legislative history of the 1986 amendments. Given that we are dealing with plain language, however, there is no way to “construe” the language so that it is satisfied when claims are presented to Amtrak. We could say that submitting a claim to Amtrak is “just like” or “equivalent to” or “effectively” submitting a claim to “an officer or employee of the United States Government,” and that subsection (a)(1) is therefore satisfied, but those would just be different ways of saying that we are not going to read (a)(1) as written by Congress. “There is a basic difference between filling a gap left by Congress’ silence and rewriting rules that Congress has affirmatively and specifically enacted.” Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). Totten and the United States imply that the asserted variance with the legislative history empowers us to ignore the plain language of subsection (a)(1), but such extraordinary power is limited to the situation in which adherence to the plain text leads to an “absurd” result, see, e.g., Lamie, 540 U.S. at-, 124 S.Ct. at 1030, and no one has suggested that to be the case here.
None of this is to gainsay the argument based on the legislative history, ably advanced (and suitably, given the nature of the question presented) in Yesudian. But there would be no need for a rule — or repeated admonition from the Supreme Court — that there should be no resort to legislative history when language is plain *495 and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions.
Totten and the United States argue that adhering to the plain language would leave intact opinions Congress intended to overrule in the 1986 amendments, but that is not clear with respect to the decision that the Senate Judiciary Committee most clearly intended to overrule — United States v. Azzarelli Construction Co., 647 F.2d 757 (7th Cir.1981). See S.Rep. No. 99-345, at 22 (1986) (S. Rep.). Azzarelli held that because the federal funds at issue were part of a “fixed and determinate yearly contribution” rather than an “open-ended federal expenditure program,” the False Claims Act did not apply. Azzarelli 647 F.2d at 761; see S. Rep. at 15, 22 (describing Azzarelli’s holding). Under our reading of subsections (a) and (c) of Section 3729, the fixed nature of a federal grant would be no bar to a claimant’s liability; such liability would turn on whether the Government “provides” the funds — in a fixed or variable amount — upon presentment of a claim to the Government. In fact, this presentment requirement was satisfied in Azzarelli: the payment scheme clearly required the state to present to the Government claims for reimbursement after it paid the contractors’ fraudulent claims. See 647 F.2d at 760.
Totten and the United States may be on firmer ground with respect to some of the other cases with which the Committee expressed displeasure. But our point is not to debate the legislative history; rather, “[t]hese uncertainties illustrate the difficulty of relying on legislative history ... and the advantage of our determination to rest our holding on the statutory text.” Lamie, 540 U.S. at ■-, 124 S.Ct. at 1034. And whatever degree of confidence about congressional purpose one derives from the legislative history, that purpose must find expression “within the permissible limits of the language” before it can be given effect. Heney J. Friendly, BENCHMARKS 216 (1967).
At its most broad, the legislative history of the 1986 amendments declares that “a false claim is actionable although the claims or false statements were made to a party other than the Government, if the payment thereon would ultimately result in a loss to the United States.” S. Rep. at 10. Even if the Committee “intended the concept of loss to the United States to be considered broadly,” Yesudian, 153 F.3d at 739, “no legislation pursues its purposes at all costs,” Student Loan Mktg. Ass’n v. Riley, 104 F.3d 397, 408 (D.C.Cir.1997) (quoting Rodriguez v. United States, 480 U.S. 522, 525-26, 107 S.Ct. 1391, 1393-94, 94 L.Ed.2d 533 (1987)) (internal quotation marks omitted). The task of statutory interpretation cannot be reduced to a mechanical choice in which the interpretation that would advance the statute’s general purposes to a greater extent must always prevail over one that would both advance the same ends — though to a slightly lesser extent — and have fewer drawbacks. See BP West Coast Prods., LLC v. FERC, 374 F.3d 1263, 1292-93 (D.C.Cir.2004) (statutory objective of providing tax incentives for certain pipeline owners does not mean all interpretive questions should be resolved in favor of whatever results in most favorable tax treatment for such owners) (citing Michigan v. EPA, 268 F.3d 1075, 1084 (D.C.Cir.2001)). Nothing in the legislative history of the 1986 amendments suggests that the present False Claims Act is, to borrow a phrase from another context, “the product of monomaniacs.” Student Loan Mktg. Ass’n, 104 F.3d at 408.
What is more, if the overriding intent of Congress were in fact to delete the re *496 quirement that claims be presented to a Government officer or employee, Congress could readily have done just that — amend subsection (a)(1) to provide that claims be presented to the Government or a grantee or recipient of Government funds. But Congress did not touch (a)(1) at all in 1986. Congress proceeded quite elliptically if its intent were to eliminate the'requirement of presentment to the Government in the case of claims against grantees.
In the final analysis, we can remain agnostic on the question whether Congress intentionally left the presentment requirement in Section 3729(a)(1) or simply forgot to take it out. The suggestion that Congress may have “dropped a stitch,” Yesudian, 153 F.3d at 738, is not enough to permit us to ignore the statutory text. The Supreme Court reminded us in. the Term just ended that “ ‘[i]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.’ ” Lamie, 540 U.S. at --, 124 S.Ct. at 1034 (quoting United States v. Granderson, 511 U.S. 39, 68, 114 S.Ct. 1259, 1274-75, 127 L.Ed.2d 611 (1994) (Kennedy, J., concurring)) (ellipsis in Lamie)-, see also Consolidated Rail Corp. v. United States, 896 F.2d 574, 579 (D.C.Cir.1990) (courts are generally not “free to ‘correct’ what they believe to be congressional oversights by construing unambiguous statutes to the contrary of their plain meaning”).
There are good reasons for this rule; a court’s attempt to correct a statute can often create new problems. At least three complications could flow from the proposed correction. First, as Judge Randolph observed in Totten I, extending False Claims Act liability here seems to result in quadruple liability for false claimants: a grantee could presumably bring suit and obtain a recovery for itself, in addition to the treble damages the Government and the relator diwy up under the Act. See 286 F.3d at 554 (Randolph, J., concurring). Totten’s response — “So be it,” Opposition to Mots, to Dismiss at 30 — is candid but not reassuring.
Second, authorizing suit on behalf of an entity to which a claim was not presented raises complicated questions in applying the statute’s scienter requirement: if the claimant has told the grantee pertinent facts that would, in the absence of such disclosure, make a claim fraudulent, it seems that the claimant has not “knowingly” presented a false claim to the grantee. See, e.g., United States ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 545 (7th Cir.1999) (“[T]he government’s knowledge effectively negates the fraud or falsity required by the [Act].”). But see United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir.1991) (“The requisite intent is the knowing presentation of what is known to be false. That the relevant government officials know of the falsity is not in itself a defense.”). It is unclear how to apply the “knowingly presents” element when the Government itself (or a relator) brings suit for claims made to a grantee, if there is no longer any requirement of presentment to the Government.
Third, an “effective” presentment approach would make the potential reach of the Act almost boundless: for example, liability could attach for any false claim made to any college or university, so long as the institution has received some federal grants — as most of them do. The Yesudian court recognized this concern:
It may be that this reading ... should not apply to all grantees. It may not be appropriate, for example, where the grantee’s federal funds are an insubstantial percentage of its total budget, where there is little likelihood that any of a defendant’s money actually came from the federal grant, or where there is little continuing contact between the grantee *497 and the government once the grant is made.
153 F.3d at 738. Such an imprecise line of demarcation, however, seems little more than a prescription for even more collateral litigation under the False Claims Act.
Our point is not that these problems would inevitably arise. It is instead that the prospect of them, and others we have not anticipated, reminds us that our job is reading statutes as written, not rewriting them “in an effort to achieve that which Congress is perceived to have failed to do.” United States v. Locke, 471 U.S. 84, 95, 105 S.Ct. 1785, 1792-93, 85 L.Ed.2d 64 (1985).
III.
A.
Our dissenting colleague prefers to sidestep the question whether Section 3729(a)(1) requires presentment and rest his decision instead on subsection (a)(2). That provision is directed at those who make false statements to get the Government to pay false claims, and has no express requirement of presentment to an officer or employee of the United States Government. None of the parties argued that subsection (a)(2) could provide the grounds for resolving this case during the six years the case was pending before reaching us for oral argument: not in the first round of litigation that included the appeal to this court in Totten I, not in the district court below on remand, and not in the initial briefing on this appeal. See Totten Suppl. Br. at 1 (“Neither side had addressed [the possible application of subsection (a)(2) instead of (a)(1)] in the court below or in the briefs submitted to this Court.”).
Ordinarily, arguments that parties do not make on appeal are deemed to have been waived. See, e.g., Ark Las Vegas Rest. Corp. v. NLRB, 334 F.3d 99, 108 n. 4 (D.C.Cir.2003) (argument petitioner raised for first time at oral argument is “waived because it was not raised in [petitioner’s] briefs”); Narragansett Indian Tribe v. National Indian Gaming Comm’n, 158 F.3d 1335, 1338 (D.C.Cir. 1998) (“[W]e ordinarily do not entertain arguments not raised by parties”); District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1084 (D.C.Cir.1984) (under “well settled” rule, “issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal”). The court has authority to remedy errors sua sponte in “exceptional circumstances” — when they “seriously affect the fairness, integrity, or public reputation of judicial proceedings,” United States v. TDC Mgmt. Corp., 288 F.3d 421, 425 (D.C.Cir.2002) (quotation omitted) — but no one has suggested that this is such a case. A party’s failure to pursue one of several available lines of argument is hardly an “error” of the sort that would warrant exercising our narrowly circumscribed remedial authority.
We regularly attempt to avoid constitutional questions by resting decision on a statutory basis, see Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 345-48, 56 S.Ct. 466, 80 L.Ed. 688 (1936), but there is no comparable doctrine that would favor avoiding one question of statutory interpretation — the one litigated by the parties that was the basis for decision below ■— by proposing, and then answering, a different one not posed by the parties or addressed by the district court. Even if such a “statutory avoidance” doctrine existed, it is difficult to see why we would invoke it in this case: the proper construction of Section 3729(a)(2) seems harder, not easier, than that of Section 3729(a)(1).[4]
*498 The dissent chides us for responding to its analysis of (a)(2), but a response is appropriate given the dissent’s determination to embrace a reading of (a)(2) that would render the plain language reading of (a)(1) largely meaningless. In short, we would prefer not to reach an issue the parties did not in the six previous years of litigation, but now that the dissent insists on putting it on the table, we are obliged to explain why the proper resolution of that issue does not undermine our reading of (a)(1) — the issue the parties did raise, and which was decided below.
B.
The dissent’s effort to avoid deciding the presentment issue by looking to Section 3729(a)(2) is ultimately unavailing — which may explain why the approach was never suggested by appellant, appellees, amicus, or the district court. Making false records or statements to get a false claim paid or approved by Amtrak is not making or using “a false record or statement to get a false or fraudulent claim paid or approved by the Government,” 31 U.S.C. § 3729(a)(2) (emphasis added).
We are apparently in agreement with the dissent that Amtrak is not “the Government” for False Claims Act purposes. See supra at 491-92. But in concluding that Section 3729(a)(2) reaches the alleged false statements in this case ■ — ■ statements that induced Amtrak to pay false claims — the dissent finds that payment by Amtrak is payment “by the Government” because some of the funds came from a federal grant to Amtrak. As support for this reading, the dissent points to Section 3729(c), which, as we have seen, provides that the term “claim” includes requests made to grantees and other recipients “if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse [the recipient] for any portion of the money or property.” Id. § 3729(c). In short, the dissent believes that Section 3729(c) collapses the distinction between the Government and its grantees where liability under Section 3729(a)(2) — but apparently not under Section 3729(a)(1) — is concerned. Totten and the Government advanced the same view, when prodded by our order requesting supplemental briefing on the (a)(2) question. Totten Suppl. Br. at 13 (“The import of Section 3729(c) is that it broadens who constitutes the Government under the False Claims Act.”); Amicus Suppl. Br. at 12-13 (“[A] claim is paid ‘by the Government’ either if the government pays it directly or if the money is disbursed by a third-party funding recipient who receives from the government all or part of the funding for the payment”).
This reading has a fatal flaw: it yields exactly the same meaning that would result if Section 3729(a)(2) did not contain the words “by the Government” at all. If Congress had intended to predicate liability under subsection (a)(2) on payment or approval either by the Government itself or by a grantee using federal funds, then a reference to false records or statements made “to get a false or fraudulent claim paid or approved” would have been *499 enough. That is exactly what subsection (a)(2) provided before the 1986 amendments. By adding subsection (c) in 1986 to provide that “claim” included claims against a grantee or recipient, Congress arguably could have achieved the result for which Totten and the Government contend simply by leaving (a)(2) untouched. Congress did not do that. At the same time it added subsection (c), Congress added the words “by the Government” to (a)(2). False Claims Amendments Act of 1986, Pub. L. No. 99-562, § 2(3), (7), 100 Stat. 3153, 3153-54. Notably, Congress did not say “by the Government or a grantee, contractor, or other recipient as provided in subsection (c) of this section.”[5]
It is, of course, a “cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.” Alaska Dep’t of Envtl. Conservation v. EPA 540 U.S. 461 n. 13, 124 S.Ct. 983, 1002 n. 13, 157 L.Ed.2d 967 (2004) (quotation omitted); see also Hibbs v. Winn, ■— U.S. -, -, 124 S.Ct. 2276, 2286,159 L.Ed.2d 172 (2004) (“rule against superfluities” bars a reading that would have one of several words in statutory provision “do all the necessary work”); Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001). Moreover, “[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.” Stone v. INS, 514 U.S. 386, 397, 115 S.Ct. 1537, 1545, 131 L.Ed.2d 465 (1995). The intended effect of adding “by the Government” at the same time as subsection (c) is fairly obvious: Congress was referring back to the presentment requirement of Section 3729(a)(1). And in so doing, Congress was reinforcing — rather than abandoning — the distinction between the Government and its grantees that might otherwise have been blurred by the addition of Section 3729(c).[6]
The parallel structure of (a)(1) and (a)(2) strongly supports this interpretation. Subsection (a)(1) refers to presenting claims to the Government for “payment or approval;” subsection (a)(2) to making false statements to get claims “paid or approved by the Government.” As it turns out, that parallel structure is no accident. Prior to 1982, the liability provisions of the False Claims Act were contained in one unwieldy sentence that had *500 survived, with only minor modifications, since the Act’s enactment in 1863:
Any person ... who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, ... knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry ... shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained ....
31 U.S.C. § 231 (1976) (emphasis added).
In 1982, Congress undertook a comprehensive revision of Title 31 of the U.S.Code and substituted “simple language ... for awkward and obsolete terms.” H.R.Rep. No. 97-651, at 1 (1982). As part of this revision, the single interminable sentence constituting the False Claims Act (of which only a small portion is quoted above) was divided into the numbered subsections of Section 3729(a). Congress made it extremely clear, however, that the bill “ma[de] no substantive change in the law.” Id. at 3; see also id. at 1 (“The purpose of the bill is to restate in comprehensive form, without substantive change, ... laws related to money and finance”); id. at 2 (“In making changes in the language, precautions have been taken against making substantive changes in the law.”).
The present Section 3729(a)(2), therefore, is the direct descendant of a clause that could only be read in conjunction with what is now Section 3729(a)(1): the reference to “such claim” was a shorthand reference to the claim already identified in the current subsection (a)(1) — that is, a claim that would be presented or caused to be presented to the United States.[7] The legislative history even explains why the word “such” disappeared from the statute: Congress removed it in light of the general purpose of the 1982 revision — to make the statute more readable. See id. at 3 (“The word ‘such’ is [no longer] used as a demonstrative adjective.”).
The dissent reads the 1982 revision to effect a significant substantive change. Rather than accepting that “paid or approved” in subsection (a)(2) is an invocation of “payment or approval” in (a)(1), the dissent seizes onto the absence of any discussion of presentment in subsection (a)(2) and concludes that Congress had a wholly different type of liability in mind — one in which presentment of a claim is irrelevant, so long as a defendant happens to have made a false record or statement. The various subsections of Section 3729(a) must of course be read disjunctively, because the word “or” appears between subsections (a)(6) and (a)(7), but that word is not a license to ignore the provenance of subsection (a)(2) in construing what “paid or approved by the Government” in that subsection means. See 2A NoRman J. SingeR, Statutes and Statutory Construo *501 tion § 46:05, at 165-66 (6th ed. 2000) (“[A] statutory subsection may not be considered in a vacuum ...; courts should not rely too heavily upon characterizations such as ‘disjunctive’ ”) (footnote omitted).
To the extent that the Government buttresses its reading of Section 3729(a)(2) with citations to the legislative history of the 1986 amendments, see, e.g., Amicus Suppl. Br. at 13, such reliance is gravely misplaced: the Senate report was based on a version of the bill that did not yet include the provision adding the words “by the Government” to subsection (a)(2). See S. Rep. at 39. It thus makes little sense to protest that giving effect to those restrictive words would run counter to some of the report’s sweeping explanations of the Senate Judiciary Committee’s intent.
The proposition that subsection (a)(2) harkens back to (a)(1), and that the latter requires presentment, is supported in scholarly commentary on the False Claims Act. A leading treatise on the False Claims Act states that “[t]he three requirements of Section [37291(a)(1)” — including the requirement “that a claim be presented to the United States” — are “still applicable” to Section 3729(a)(2). 1 John T. Boese, Civil False Claims and Qui Tam Actions § 2.01[B], at 2-21 (2d ed. Supp. 2004-1). The dissent’s contrary conclusion — that subsection (a)(2) does not require any presentment that may be required under subsection (a)(1) — has tellingly little support.
The dissent’s reading of (a)(2) would make the presentment requirement in (a)(1), which the dissent does not challenge head-on, largely meaningless. In most cases false records or statements are made or used to get false claims paid or approved. If the dissent’s view prevailed, the plain language requirement in (a)(1) that claims be presented to an officer or employee of the Government would only trip up those foolish enough to rely on (a)(1) rather than (a)(2) — and even they might find a court willing to excuse their omission. The dissent candidly views this as all well and good — a way of “reconciling § 3729(a) as a whole with § 3729(c) and the legislative history,” post at 503 — but it is not our task to find ways of circumventing plain statutory language.[8] Allowing (a)(2) to swallow (a)(1) is particularly egregious, since it seems clear that (a)(2) is complementary to (a)(1), designed to prevent those who make false records or statements to get claims paid or approved from escaping liability solely on the ground that they did not themselves present a claim for payment or approval. See United States ex. rel. Harris v. Bernad, 275 F.Supp.2d 1, 6 (D.D.C.2003) (“the main purpose of section 3729(a)(2) is to remove any defense that the defendants themselves did not submit false claims to the government”) (citing Boese, supra, at § 2.01[B]). This is presumably why (a)(2) was not argued by the parties throughout this litigation. To the extent the dissent’s reading of (a)(2) does not completely swallow (a)(1), it leads to an anomalous result: a defendant who makes a false record to help someone else get a false claim paid or approved by a grantee would be covered by the Act, but a defendant who actually *502 presents a false claim to the grantee for payment or approval would not be¡ •
The dissent seems to recognize that a false record cannot be said to be used to get the Government to “approve” a claim if. the Government has no role to play because there is no presentment, but contends that the situation is very different under the payment prong of (a)(2). See post at 505-06. But under that prong as well the false record .does not prompt any action “by the Government” under the dissent’s view, but only by the grantee or contractor. The dissent hinges coverage on the presence of funds that can trace their genealogy to the Government, without explaining the limits of this non-statutory “federal monies” concept. If, as was actually largely the case here, see Decl. of Carol J. Dillon; Decl. of Brian Adam, Amtrak pays Bombardier with proceeds from a Canadian Export Development Corporation loan and an Export Development Bank loan, and then repays the loans with money from its capital budget, it is not clear that Bombardier’s claims — as opposed to those of the Export Corporation and Bank for repayment — are satisfied out of federally provided funds. And it remains unclear whether “federal monies,” which apparently retain that character under the dissent’s view even though no further government role is involved, are still “federal monies” when passed along to subgrantees or subcontractors, employees and suppliers of subgrantees and subcontractors, and so on.[9]
* * *
The dissent literally begins and ends with legislative history. See post at 502-OS, 515-16. We will end as we began, too, but with the statutory language: Section 3729(a)(1) imposes liability on anyone who “knowingly-presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval.” That was not done here; claims were presented only to Amtrak for payment or approval, and Amtrak is not the Government. Section 3729(a)(2) imposes liability on anyone who makes a false record or statement “to get a false or fraudulent claim paid or approved by the Government.” That too was not done here; the records were made to get claims paid or approved by Amtrak, and Amtrak is not the Government.
The judgment of the district court is affirmed.

. The statute governing qui tam actions under the False Claims Act allows the Government to intervene in the district court and take over responsibility for conducting the litigation. See 31 U.S.C. § 3730(b)(2), (4)(A). In this case, the Government chose not to intervene; for its part, Amtrak has not brought any action against Bombardier or Envirovac for the fraud Totten alleges.

. It was also arguably not preserved for appeal, because it was made only in the most cursory fashion in the district court. We need not decide whether it was adequately preserved, because it was in any event preserved only to fail.

. Although the dissent ultimately does not challenge our reading of subsection (a)(1), it does dispute this explanation of how (a)(1) and (c) can be read together, in the course of pressing its theory that (a)(2) does not require presentment. See post at 497-98. According to the dissent, we are wrong to say that "False Claims Act liability will attach if the Government provides the funds to the grantee upon presentment of a claim to the Government,” because the italicized language does not appear in subsection (c). See id. at 498. Of course it does not: our point was not to suggest that subsection (c) itself contains a presentment requirement — it is, after all, a definitional rather than a liability provision ■— but instead to respond to the erroneous contention that a presentment requirement was somehow inconsistent with the definition of a claim in subsection (c).

. The cases the dissent cites to rebut this point, see post at 504 & n.3, are far afield. Resting on (a)(1) would not implicate an ante *498 cedent but unaddressed issue, as in United States National Bank of Oregon vs. Independent Insurance Agents of America, 508 U.S. 439, 447, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993), nor is the (a)(2) issue one that has arisen because of an intervening decision of this court, as in Aeree v. Republic of Iraq, 370 F.3d 41, 58 (D.C.Cir.2004). Finally, in Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1030 (D.C.Cir.2004), a sovereign defendant had failed to appear altogether. The Cicippio-Puleo court's decision to order briefing on certain questions sua sponte has no relevance to this case, in which Totten has litigated vigorously — but not at all on (a)(2).

. The dissent purports to make a plain language argument, but has to alter the statutory words to make its point, asserting that “paid by the Government” means "paid with government money.” See post at 506. The statute does not talk of "government money” or, the term the dissent employs elsewhere, "federal monies.” It speaks of claims "presented ... to an officer or employee of the United States Government ... for payment or approval” and claims "paid or approved by the Government.”

. The dissent’s suggestion that "by the Government” was added to clarify that the Act reaches false claims only where the Government "directly or indirectly provides the funds and suffers the loss,” post at 507-08 n.8, does not hold up; the definition of "claim” already contains that limitation. See 31 U.S.C. § 3729(c). The dissent is unwilling to give the addition of "by the Government” to (a)(2) any weight because it cannot find a statement in any committee report explaining what Congress intended to accomplish by that amendment. See post at 507-08. But statutory language cannot be slighted simply because it is not addressed in legislative history. See, e.g., New York v. FERC, 535 U.S. 1, 20-21, 122 S.Ct. 1012, 1024-25, 152 L.Ed.2d 47 (2002). The case cited by the dissent — Cook County, Illinois v. United States ex rel. Chandler, 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003) — rejected an argument that Congress accomplished a significant change without discussion. The presentment requirement, however, has been in the statute for 140 years. The addition of "by the Government” did not change but confirmed that.

. The dissent offers a different interpretation of "such claim/' arguing that it refers to a "claim upon or against the Government of the United States” rather than to a claim presented to the United States. See post at 509 & a.11. Within the framework of the pre-1982 version of the statute, we fail to see how the dissent’s reading is any different from our own: a claim could not be upon or against the Government unless it was presented to the Government. The parallel between presented to the Government for payment or approval *501 and paid or approved by the Government confirms the point.

. The dissent asserts that it is not guilty of this transgression because there is no plain language presentment requirement in (a)(2). See post at 503 n.2. This misses the point: there is a plain language presentment requirement in (a)(1) and the dissent’s reading of (a)(2) would circumvent that. Elsewhere the dissent recognizes that “words of a statute must be read in context and with a view to their place in the overall statutory scheme." See post at 510 (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000)).

. The policy concern that the Government invokes and that the dissent repeats — that requiring presentment will "withdraw!] False Claims Act protection” from a "broad swath of false claims,” see post at 516 (quoting U.S. Br. at 9) — rather plainly begs the question. In addition, the Government is of course free to structure its grants in such a way as to require presentment and thereby trigger coverage under the False Claims Act, and often does so. See, e.g., United States ex rel. Marcus v. Hess, 317 U.S. 537, 543, 63 S.Ct. 379, 383-84, 87 L.Ed. 443 (1943) ("It was a prerequisite to respondents’ payment by the [grantee] that ... estimates be filed, transmitted to, and approved by, the [Government] authorities.”).