UNITED STATES of America, et al

v.

SEQUEL CONTRACTORS, INC., et al.

No. CV 04–1868–RGK(PJW).

United States District Court, C.D. California.

Nov. 14, 2005.

---

KLAUSNER, District Judge.

**Proceedings:** **(IN CHAMBERS)**

Defendant Mitchell Ward's Motion to Dismiss Complaint in Intervention Pursuant to FRCP Rules 12(b)(1), 12(b)(6) and 9(b) (DE 59);

Defendants Sequel Construction, Thomas Pack, and Abel Magallanes' Motion to Dismiss Pursuant to FRCP Rules 12(b)(1), 12(b)(6) and 9(b) (DE 60);

Defendants JHTM & Associates, Inc.'s Motion for a More Definite Statement (FRCP 12(e)) and Joinder in Other Parties Motions to Dismiss—joined by defendant in intervention David McMiller (DE 61);

Defendant Sean Donnelly's Motion to Strike and Motion to Dismiss—joined by defendant in intervention David McMiller (DE 63); and

Plaintiffs in Intervention The County of Orange's Motion to Dismiss JHTM & Associates, Inc.'s Second, Fifth, and Sixth Claims for Relief for Failure to State a Claim Upon Which Relief Can Be Granted (DE 74)

## I. *FACTUAL BACKGROUND*

On October 22, 2004, *qui tam* plaintiff Sialic Contractors Corp. ("Sialic") filed its First Amended Complaint under seal against Sequel Contractors, Inc. ("Sequel") and JHTM & Associates, Inc. ("JHTM"), alleging violations of the Federal False Claims Act[1] and the California False Claims Act.[2]

Sialic alleges the following facts; Orange County hired JHTM to manage construction projects at the John Wayne Airport ("Airport"). JHTM's duties included managing the County's construction contracts with Sequel, a paving contractor. For each construction project, JHTM prepared a Job Order which estimated the cost of the project and sent the Job Order to Sequel. After Sequel completed the project, Sequel prepared a Payment Request which JHTM reviewed and forwarded to the County with JHTM's approval. The County paid Sequel according to these Payment Requests. Sialic alleges that JHTM and Sequel worked together to overstate the amount of work Sequel performed, causing Orange County to overpay Sequel.

On June 1, 2005, Orange County (with Sialic, "Plaintiffs") filed a Complaint in Intervention ("CII") against Sequel, JHTM, Thomas S. Pack, Mitchell W. Ward, Abel Magallanes, David McMiller, and Sean Donnelly (collectively, "Defendants"). The CII alleges (1) violation of the California False Claims Act, (2) negligent misrepresentation, (3) breach of contract, (4) negligence, and (5) fraud and deceit. The CII is based on the same scheme of overpayments alleged by Sialic.

JHTM filed a Counterclaim against Orange County on August 8, 2005, stating causes of action for (1) breach of contract, (2) negligent supervision, (3) equitable indemnification, (4) breach of the covenant of good faith and fair dealing, (5) setoff, (6) violation of California Business and Professions Code § 17200, and (7) declaratory relief. JHTM alleges that the project managers it supplied to Orange County to manage the County's construction contracts with Sequel were controlled and supervised directly by County personnel, and therefore the County is solely liable for the injuries caused by those project managers.

---

**1.** 31 U.S.C. § 3729. This Act imposes civil liability for the presentation to the federal government of a false claim for payment.

**2.** Cal. Gov.Code § 12651. This Act mirrors the federal False Claims Act, imposing liability for presentation of false claims to the state government.

Presently before the Court are Defendants' Motion to Dismiss Sialic's Second Amended Complaint, Motion to Dismiss Orange County's Complaint in Intervention, Motion for More Definite Statement, and Motion to Strike Portion of Complaint in Intervention. Orange County also brings a Motion to Dismiss the Second, Fifth, and Sixth Claims for Relief in JHTM's Counterclaim. For the reasons explained below, the Court denies Defendants' Motions to Dismiss, Motion for More Definite Statement, and Motion to Strike, and Orange County's Motion to Dismiss the Second and Fifth Claims in JHTM's Counterclaim, and grants Orange County's Motion to Dismiss the Sixth Claim in JHTM's Counterclaim.

## II. *JUDICIAL STANDARD*

### A. *Subject Matter Jurisdiction*

Federal district courts have jurisdiction over actions arising under federal law. 28 U.S.C. § 1331. Federal district courts may exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy" as a federal claim. 28 U.S.C. § 1367(a). State law claims are part of the "same case" as federal claims if they "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### B. *Failure to State a Claim under Rule 12(b)(6)*

A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) will be granted if the plaintiff can prove no set of facts that would support a claim for relief. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). Courts must take the plaintiff's allegations as true and construe disputed facts in the light most favorable to the plaintiff. *Id.*

### C. *Failure to Plead Fraud with Particularity under Rule 9(b)*

Under Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity" but intent "may be averred generally." Fed.R.Civ.P. 9(b). In the Ninth Circuit, Rule 9(b) requires allegations of fraud to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### D. *Motion for More Definite Statement under Rule 12(e)*

Rule 12(e) allows a party to move for a more definite statement if a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) motions "are viewed with disfavor, and are rarely granted." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D.Cal.1999). Rule 12(e) motions attack the intelligibility of the complaint, not the lack of detail, and are properly denied where the complaint notifies the defendant of the substance of the claims asserted. *Beery v. Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D.Cal.1993). "If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied." *Id.*

### E. *Motion to Strike under Rule 12(f)* '

Rule 12(f) allows a party to move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A matter is "immaterial" if it has no bearing on the claims and defenses pleaded. *Fantasy,*

*Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds in Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534–35, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Thus, "[m]otions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co.,* 814 F.Supp. 820, 830 (N.D.Cal.1992).

## III. *DISCUSSION*

### A. *Plaintiffs Have Standing to Bring Their Complaints*

Sialic's Second Amended Complaint ("SAC") alleges violations of both the federal False Claims Act ("FCA")[3] and the California False Claims Act ("California FCA").[4] Orange County's Complaint in Intervention ("CII") alleges violation of the California FCA and other state law claims. The FCA imposes civil liability for the presentation to the federal government of a false claim for payment. The California FCA mirrors the federal FCA, imposing liability for presentation of false claims to the state government.

### 1. *Sialic Has Standing under the Federal False Claims Act and California False Claims Act*

 The FCA allows a private party to bring a civil action on behalf of the United States for a violation of the FCA. 31 U.S.C. § 3730(b)(1). When a private party initiates an FCA action, the United States has the option to intervene and take over prosecution of the action. 31 U.S.C. § 3730(b)(2). In this case, the United States declined to intervene. When the United States declines intervention, the private party, called the *qui tam* plaintiff, may proceed with the action and may re-

cover up to 30% of the proceeds of the action, 31 U.S.C. § 3730(d)(2). Sialic has standing under the FCA as a *qui tam* plaintiff.

The California FCA allows a private party to bring an action as a *qui tam* plaintiff on behalf of the state or a political subdivision. Cal. Gov.Code § 12652(c)(1). A "political subdivision" includes any city or county. Cal. Gov.Code § 12650(b)(3). The political subdivision has the option to intervene or to allow the *qui tam* plaintiff to proceed. Cal. Gov.Code § 12652(c)(7)(D). In this case, Orange County opted to intervene. When a political subdivision intervenes, the *qui tam* plaintiff remains a full party to the action, Cal. Gov.Code § 12652(e)(1). Thus, Sialic has standing under the California FCA.

### 2. *Orange County Has Standing under the California False Claims Act*

The California FCA allows a county to proceed with the action itself or allow the *qui tam* plaintiff to proceed. Cal. Gov. Code § 12652(c)(7)(D). Orange County has elected to intervene, and therefore has standing under the California FCA.

### B. *This Court Has Jurisdiction over All Claims in Both Complaints*

This Court has original jurisdiction over the FCA claim in the SAC. 28 U.S.C. § 1331. This Court may exercise supplemental jurisdiction over the remaining state law claims in both Complaints because the state law claims derive from the same operative facts as the FCA claim. *United Mine Workers,* 383 U.S. at 725, 86 S.Ct. 1130. Jurisdiction over the state law claims is also specifically authorized by 31 U.S.C. § 3732(b) (authorizing federal jurisdiction "over any action brought under the

---

**3.** 31 U.S.C. § 3729.

**4.** Cal. Gov.Code § 12651.

laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under [the FCA]"); *see United States ex rel. Anthony v. Burke Eng'g Co.*, 356 F.Supp.2d 1119, 1119 (C.D.Cal.2005) (holding that § 3732(b) authorizes federal jurisdiction over state law claims that arise from the same scheme of false claims as a federal FCA claim). Therefore the Motions to Dismiss pursuant to Rule 12(b)(1) are denied.

### C. *The SAC States a Claim for Relief under the Federal False Claims Act*

The SAC alleges that Defendants violated the first three subsections of the FCA. (SAC ¶ 35, 36, 37.) Those sections impose liability on anyone who "(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(1)-(3).

Defendants argue that the SAC fails to state a claim under the FCA for two reasons: (1) the SAC does not allege that Defendants themselves directly presented a false claim to the federal government, and (2) the SAC does not allege that Defendants knew that the claims would be submitted to the federal government. The Court addresses each of these arguments below, and concludes that the SAC does state a claim for relief under the first three subsections of the FCA.

#### 1. *The SAC Alleges That Defendants Caused Direct Presentation of a False Claim to the Federal Government*

Defendants argue that the SAC fails to state a claim under the FCA because the SAC alleges that Defendants presented a false claim to Orange County, not to the federal government. Defendants rely heavily on a recent case from the District of Columbia Circuit, *U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C.Cir. 2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 2257, 161 L.Ed.2d 1059 (2005). In *Totten*, the District of Columbia Circuit found no FCA liability where defendants presented false claims to Amtrak, which paid the claims with federal funds. *Id.* at 490. Defendants rely on *Totten* to argue that no FCA liability arises where a party presents a false claim to a recipient of federal funds, such as Orange County. Plaintiffs argue that Defendants misinterpret *Totten*, and the United States has filed an amicus curiae brief supporting Plaintiffs' position on this issue. The United States also argues that *Totten* was wrongly decided and should not be followed, because it improperly narrows the scope of the FCA. However, this Court need not decide whether to follow *Totten*, because the SAC states a claim for relief even under *Totten's* narrow interpretation of the FCA.

#### a. Totten *Does Not Require Direct Presentation by Defendants*

Defendants' reading of *Totten* and the FCA would nullify the plain language of the statute, which imposes liability on anyone who "knowingly presents, or *causes to be presented*, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)

(emphasis added). This language clearly means that defendants are liable for causing a third party to present a false claim to the federal government, even if the defendants do not directly present the claim themselves.

The *Totten* court held that liability under the FCA requires presentation of a false claim to the federal government. However, *Totten* did not require that the defendants themselves directly present the false claim to the federal government. Instead, the Totten court held that *someone* must directly present a false claim to the federal government in order for liability under the FCA to arise. *Totten,* 380 F.3d at 493.

■ The *Totten* court used the *Azzarelli* case as an example. *Id.* at 495; *United States v. Azzarelli Construction,* 647 F.2d 757 (7th Cir.1981). *Azzarelli* involved two highway contractors who presented fraudulent claims to the state of Illinois, which subsequently presented the claims to the federal government for reimbursement. *Azzarelli,* 647 F.2d at 758. The *Totten* court explained that the current FCA[5] does impose liability under the facts of *Azzarelli* because "the payment scheme [in *Azzarelli* ] clearly required the state to present to the Government claims for reimbursement after it paid the contractors' fraudulent claims." *Totten,* 380 F.3d at 495. Thus, FCA liability arises where a defendant presents false claims to a state, which then presents the false claims to the federal government.

The *Totten* court found no FCA liability for the false claims presented to Amtrak because the claims were never presented to the federal government by any party, not because the defendants themselves failed to directly present the claims to the federal government. Thus *Totten* holds

that the FCA is not implicated if no claim is ever presented to the federal government. The FCA is implicated where the defendants directly present a false claim to the federal government, or cause a third party to present the false claim. As explained below, the SAC states a claim for relief under *Totten 's* reading of the FCA.

b. *The SAC Alleges Presentation to the Federal Government by a Third Party*

■ The facts alleged in the SAC, if true, may support a finding that Defendants caused a third party, Orange County, to present a false claim to the federal government. The SAC alleges that Sequel and JHTM prepared Job Orders and Payment Requests that falsely inflated the value of the work Sequel performed on the K9 Explosives Magazine job, claiming the cost was $146,145.00 when it should have been $42,137.20. (SAC ¶ 34.) The SAC alleges that Sequel and JHTM acted knowingly. (SAC ¶ 35, 36.) The SAC also alleges that JHTM falsely represented that the information in the Job Orders was accurate in order to induce the County to approve them. (SAC ¶ 31.) Orange County paid Sequel the inflated amount in July 2002. (SAC ¶ 34.) In September 2003, Orange County submitted a request to the FAA for reimbursement, and in October 2003, the FAA reimbursed the County for approximately 80% of the cost of the job. (SAC ¶ 38, 39.)

These allegations, if true, may support a finding that Defendants knowingly caused Orange County to present a false claim for payment directly to the FAA, an agency of the federal government, in violation of section (a)(1) of the FCA, that Defendants knowingly made false records to get a false claim paid by the FAA in violation of

5. The FCA was amended in 1986.

section (a)(2), and that Defendants conspired to defraud the FAA by getting a false or fraudulent claim allowed or paid, in violation of section (a)(3). The SAC should not be dismissed for failing to allege that Defendants themselves presented a false claim to the federal government.

### 2. *The SAC Alleges That Defendants Knowingly Presented What They Knew to Be False*

■ Defendants next argue that the SAC should be dismissed because it fails to allege that Defendants knew their claims would be presented to the federal government. Defendants argue that the plain language of the FCA, imposing liability on anyone who *"knowingly* presents, or causes to be presented, *to an officer or employee of the United States Government* . . ."* requires knowledge that the claim is presented to the federal government. 31 U.S.C. § 3729(a)(1) (emphasis added).

The plain language of § 3729(a)(1) does not make clear whether the "knowingly" requirement applies to the presentation of the claim, the federal government's involvement, or the falsity of the claim. However, § 3729(b) explains that "the terms 'knowing' and 'knowingly' mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). This definition suggests that "knowingly" applies to the truth or falsity of the information in the claim, and not to the federal government's involvement.

Case law supports this interpretation of the FCA. The Ninth Circuit has conclusively stated that to establish liability under the FCA, "[t]he requisite intent is the knowing presentation of what is known to be false." *United States ex rel. Hagood v.*

*Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir.1991). The Ninth Circuit has repeatedly affirmed this definition of the FCA's required mental state. *E.g., United States v. Mackby,* 339 F.3d 1013, 1017 (9th Cir.2003); *United States ex rel. Hochman v. Nackman,* 145 F.3d 1069, 1073 (9th Cir.1998); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1266 (9th Cir.1996); *Wang v. FMC Corp.,* 975 F.2d 1412, 1420 (9th Cir.1992). Other Circuits agree. *Hindo v. Univ. of Health Sciences,* 65 F.3d 608, 613 (7th Cir.1995) (citing *Hagood* and holding that "[t]he requisite intent is the knowing presentation of what is known to be false"); *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,* 985 F.2d 1148, 1156 (2d Cir.1993) (holding that "we agree with *Hagood* that the statutory basis for an FCA claim is the defendant's knowledge of the falsity of its claim").

Thus, the knowledge requirement of the FCA applies to the presentation of the claim and the falsity of the information in the claim. Defendants fail to cite any case law holding that the knowledge requirement applies to the federal government's involvement. Thus, the SAC need not allege that Defendants knew their claim would be presented to the federal government. The Court finds that the SAC states a claim for relief under the FCA, and Defendants' Motions to Dismiss on this ground are denied.

### D. *The CII States a Claim Against Donnelly for Negligent Misrepresentation and Violation of the California False Claims Act*

■ Donnelly argues that the CII fails to state a claim against him for violation of the California FCA because the CII does not allege that Donnelly had knowledge that the Job Orders were false. The California FCA imposes liability on anyone

who knowingly presents, or causes to be presented, a false claim to the state or a political subdivision of the state, knowingly uses a false record to get a false claim paid, or conspires to defraud the state or subdivision by getting a false claim paid. Cal. Gov.Code § 12651(a)(1)-(3). The CII alleges that Donnelly signed Job Orders and Payment Requests that contained false statements, knowing that they contained false statements and knowing that the County would rely on those false statements in making payments to Sequel. (CII 44, 45.) These allegations state a claim against Donnelly for violation of the California FCA.

■ Donnelly also argues that the CII fails to state a claim against him for negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must allege "(1) a representation as to a material fact; (2) that the representation is untrue; (3) that the defendant made the representation without a reasonable ground for believing it true; (4) an intent to induce reliance; (5) justifiable reliance by the plaintiff who does not know that the representation is false; and (6) damage." *Bear Stearns & Co. v. Daisy Sys. Corp. (In re Daisy Sys. Corp.)*, 97 F.3d 1171, 1180 (9th Cir.1996).

■ The CII alleges (1) representations by Donnelly stating the value of work done by Sequel and recommending that the County pay Sequel (CII ¶ 62, 64); (2) that the representations were false (CII ¶ 65); (3) that Donnelly had an insufficient basis to justify belief in the truth of the representations (CII ¶ 63, 66); (4) that Donnelly acted in order to induce the County to approve the false representations (CII ¶ 39); (5) that the County justifiably relied on the representations without knowing them to be false (CII ¶ 67); and (6) that the County suffered damage as a result (CII ¶ 69). Thus, the CII states a claim

against Donnelly for negligent misrepresentation. The Court denies Donnelly's Motion to Dismiss under Rule 12(b)(6).

**E. *The SAC and CII Meet the Heightened Pleading Requirements of Rule 9(b)***

■ Claims brought under the FCA must meet the heightened pleading requirements of Rule 9(b). *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir.2001). Claims brought under the California FCA must also meet that standard. *California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638, 639 (N.D.Cal.1997). The Court finds that the SAC and CII satisfy Rule 9(b). However, the Court finds it proper to grant Ward's request that the Court require Orange County to attach copies of the 30 Job Orders, the 42 Payment Requests, and the contracts that form the basis of the Complaints.

1. *The SAC Pleads Violation of the Federal False Claims Act with Particularity*

■ Defendants argue that the SAC fails to allege violation of the FCA with particularity, and must be dismissed pursuant to Rule 9(b). In the Ninth Circuit, Rule 9(b) requires that allegations of fraud "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986).

The SAC alleges that in May 2002, Sequel submitted Payment Requests to Orange County totaling $146,145.00 for completion of the K9 job, and that these Payment Requests were false because the amount should have been $42,137.20. (SAC ¶ 34.) The SAC explains that Sequel claimed 350 cubic yards of concrete for

this job, when Sequel actually used only 73 cubic yards. (SAC ¶ 34.) JHTM allegedly approved this false claim. (SAC ¶ 34.) These allegations identify the time as May 2002 and the place as Sequel's Payment Requests. The specific content of the misrepresentations is the total cost of the job, and the amount of concrete used. The parties involved are identified as Sequel and JHTM, through their representatives Ward, Pack, Magallanes, and McMiller. (SAC ¶ 4, 5, 34.) These allegations are "specific enough to give defendants notice of the particular misconduct which is alleged ... so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993) (*quoting Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)). Therefore, the FCA claim meets the heightened pleading requirements of Rule 9(b).

2. *The SAC Pleads Violation of the California False Claims Act with Particularity*

██ The California FCA claim in the SAC is based on the false Payment Request discussed above, as well as additional Payment Requests and Job Orders that are allegedly false. (SAC ¶ 41, 42.) The allegations regarding the false Payment Request for $146,145.00 for the K9 job are stated with particularity, as discussed above. Therefore, the SAC's claim of violation of the California FCA meets the requirements of Rule 9(b).

3. *The CII Pleads Violation of the California False Claims Act with Particularity*

██ The CII pleads the same basic facts as the SAC, with the exception of the allegations regarding the K9 job. These remaining allegations describe a general fraudulent scheme rather than any one specific transaction. Those general allegations identify the parties involved as Sequel and JHTM, through their representatives Pack, Ward, Magallanes, McMiller, and Donnelly, (CII ¶ 12, 44, 45, 46.) The CII also identifies the time frame as spanning from 1996 to 2004. (CII ¶ 43, 44, 46.) The location of the misrepresentations is 42 Payment Requests. (CII ¶ 43, 44, 49.) The content of the misrepresentations is overstated unit prices, overstated mark ups, and other types of false information. (CII ¶ 37, 43, 44.)

Rule 9(b) does not require that the complaint "describe in detail a single specific transaction." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (denying a Rule 9(b) motion to dismiss where the complaint alleged a general scheme of improper revenue recognition in shipments to a variety of customers, without describing a specific shipment); *see also United States ex rel. Anthony v. Burke Eng'g Co.*, No. 00–1216, 2004 WL 2106621, at *3, 2004 U.S. Dist. LEXIS 18916, at *11 (C.D.Cal. Sept. 13, 2004) (finding Rule 9(b) satisfied where complaint claiming violations of the FCA and California FCA did not list any specific transactions, but gave examples of false statements in seventy claims spanning a seven year period, and explaining that "[t]he Court does not find it necessary to plead facts regarding each of the 70 transactions in the Complaint"); *United States ex rel. McCarthy v. Straub Clinic and Hosp., Inc.*, 140 F.Supp.2d 1062, 1068 (D.Haw.2001) (denying Rule 9(b) motion to dismiss FCA action even though "the Complaint does not match these specific examples [of false claims] with specific dates or people" and "discusses mostly common practices rather than specific dates and times of submission of false claims" because complaint alerted the defendants as to the charges against them).

The Court finds the allegations in the CII to be "specific enough to give defendants notice of the particular misconduct which is alleged ... so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner*, 6 F.3d at 671. Therefore, the CII's claim for violation of the California FCA meets the requirements of Rule 9(b).

### 4. *The CII Pleads Fraud with Particularity*

■ The same set of facts forms the basis for the CII's claim of fraud. In alleging fraud, the CII states that the parties are Sequel and JHTM, through their representatives Pack and McMiller. (CII ¶ 51.) The time is 1996 through 2004. (CII ¶ 51.) The location is the Payment Requests. (CII ¶ 52.) The content of the misrepresentations is overstated unit prices, overstated mark ups, and other types of false information. (CII ¶ 37, 51, 55.) Therefore, the CII's allegations of fraud also satisfy Rule 9(b). Defendants' Motion to Dismiss pursuant to Rule 9(b) is denied.

### 5. *Plaintiffs must Attach Documents to Their Complaints*

The Court finds it proper to grant Ward's request that the Court require Plaintiffs to attach copies of the 30 Job Orders, the 42 Payment Requests, and the contracts that form the basis of their claims. Defendants should not have to use their discovery requests to locate the 72 misrepresentations that Plaintiffs allege they made. Attaching these documents to the Complaints will allow Defendants to determine exactly what they allegedly misrepresented, which Defendants signed which documents, specific dates, and other relevant details.

### F. *The Motion for More Definite Statement Is Denied*

■ JHTM's Motion for More Definite Statement is not a proper Rule 12(e) motion and must be denied. JHTM does not allege that it cannot identify the nature or substance of Plaintiff's claims, or that the Complaint is unintelligible. Instead, JHTM argues that the Complaint lacks detail, an argument that is not properly brought under Rule 12(e). *Beery v. Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D.Cal.1993). The details JHTM seeks are obtainable through discovery. Therefore, the Motion for More Definite Statement is denied.

### G. *The Motion to Strike Is Denied*

■ JHTM's Motion to Strike is similarly without merit and must be denied. First, JHTM argues that paragraphs 37 and 38 of the CII should be stricken because Orange County pleads "on information and belief," which JHTM argues is improper under Rule 11(b) because Orange County possesses the documentary evidence on which the pleadings are based. However, Rule 11(b)(3) authorizes such pleading where the party forms a belief, based on a reasonable inquiry, that the allegations "are likely to have evidentiary support after a reasonable opportunity for further investigation." Fed.R.Civ.P. 11(b)(3). JHTM has not presented any evidence that Orange County did not make a reasonable inquiry or did not believe the allegations in paragraphs 37 and 38 were likely to have evidentiary support. Moreover, if JHTM believes that Orange County has violated Rule 11, JHTM must bring a motion for sanctions under Rule 11(c). The present Motion to Strike does not follow the procedure in Rule 11(c) for challenging pleadings. Therefore, the Motion to Strike paragraphs 37 and 38 is denied.

■ Second, JHTM argues that the first sentence of paragraph 62 should be stricken as immaterial. The sentence alleges that "JHTM, through its authorized representatives ... prepared and submitted to Sequel ... numerous Job Orders which falsely inflated the value of work which Sequel was to perform." (CII ¶ 62.) A matter may be stricken as immaterial if it has no bearing on the case. *Fantasy*, 984 F.2d at 1527. The allegation in the above sentence clearly may have some bearing on the litigation, so the allegation is not immaterial. Therefore, the Motion to Strike is denied.

### H. *The Motion to Dismiss JHTM's Counterclaim Is Granted in Part*

#### 1. *JHTM States a Claim for Negligence*

■ Orange County argues that JHTM's Counterclaim fails to state a claim for negligence. A plaintiff states a claim for negligence under California law by alleging that (1) the defendant had a legal duty to use due care, (2) the defendant breached that duty, (3) the plaintiff suffered injury, and (4) the plaintiff's injury was caused by the defendant's breach. *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*, 1 Cal.3d 586, 594, 83 Cal.Rptr. 418, 463 P.2d 770 (1970).

#### a. *JHTM Alleges the Existence of a Legal Duty*

■ JHTM alleges that Orange County had a duty to supervise the project managers that JHTM provided to Orange County. (Countercl. ¶ 47.) "California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Batista v. Stewart Enters., Inc.*, 126 Fed.Appx. 767, 771, 2005 WL 19530 (9th Cir.2005) (*quoting Doe v. Capital Cities*, 50 Cal.App.4th 1038, 1054, 58 Cal.Rptr.2d 122 (1996)). This liability extends to public entities. *City of Los Angeles v. Superior Court*, 33 Cal.App.3d 778, 782–83, 109 Cal.Rptr. 365 (1973) ("As an employer a municipality may incur liability for ... a negligent failure to adequately supervise its employees."); Cal. Gov.Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee ...."). 

■ JHTM states that the project managers were "special employees" of the Airport, because the project managers were directly controlled and supervised by Airport personnel. (Countercl.¶ 9.) When an employer transfers control over its employee to a second, "special" employer, "the special employer becomes solely liable under the doctrine of respondeat superior for the employee's job-related torts." *Wilson v. County of San Diego*, 91 Cal. App.4th 974, 984, 111 Cal.Rptr.2d 173 (2001) (*quoting Marsh v. Tilley Steel Co.*, 26 Cal.3d 486, 492, 162 Cal.Rptr. 320, 606 P.2d 355 (1980)). JHTM asserts that the County had a duty to supervise these special employees. (Countercl.¶ 47.) Thus, JHTM alleges the existence of a legal duty.

#### b. *JHTM Alleges a Breach of the Duty*

JHTM alleges that the County negligently supervised the project managers that JHTM provided to the County as special employees. (Countercl.¶ 53, 54, 59.) Thus, JHTM alleges that the County breached its duty.

#### c. *JHTM Alleges Injury*

JHTM alleges that it incurred $300,000 in payroll expenses and $630,000 in lost value to its business. (Countercl.¶ 44, 54.) Thus JHTM alleges injury.

#### d. *JHTM Alleges Causation*

JHTM alleges that Orange County's negligence caused JHTM's injury. (Countercl. ¶ 54.) Thus, the Court finds that JHTM has stated a claim for negligence, and the County's Motion to Dismiss pursuant to Rule 12(b)(6) is denied.

#### 2. *JHTM May Assert Setoff as a Counterclaim*

Orange County argues that JHTM must assert setoff as an affirmative defense, not a counterclaim. However, "[u]nder the Federal Rules of Civil Procedure, a defendant's claim of setoff against a plaintiff is to be made by means of counterclaim in its answer to the complaint." *Valley Disposal Inc. v. Centr. Vermont Solid Waste Mgmt. Dist.*, 113 F.3d 357, 364 (2d Cir.1997). Courts sometimes use the terms "setoff" and "counterclaim" interchangeably. *E.g., Parker N. Am. Corp. v. Resolution Trust Corp. (In re Parker N. Am. Corp.)*, 24 F.3d 1145, 1155 (9th Cir.1994) (expressing "a willingness to disregard labels and characterize an action according to its substance" where a party "at various times, characterized the preference action as a claim, counterclaim, offset, and affirmative defense"). Orange County has offered no clear authority that setoff may not be pled as a counterclaim. Accordingly, the County's Motion to Dismiss JHTM's claim for setoff is denied.

#### 3. *JHTM Fails to State a Claim for Relief for Unfair Competition*

JHTM alleges that Orange County's wrongful conduct violated California's unfair competition law ("UCL") and that as a result the County was unjustly enriched. (Countercl. ¶ 71, 72.) JHTM claims that it is entitled to restitution. (Countercl. ¶ 73.) Orange County argues that JHTM fails to state a claim for relief under the UCL.

The UCL imposes liability for unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. The remedies an individual may seek under the UCL are limited to injunctive relief and restitution. Cal. Bus & Prof.Code § 17203; *Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440, 452, 30 Cal. Rptr.3d 210 (2005). JHTM seeks only restitution. (Countercl. ¶ 73.) "[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest[.]" *Id.* at 453, 30 Cal.Rptr.3d 210; *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F.Supp.2d 1059, 1093 (C.D.Cal.2003). Damages are not an available remedy under the UCL. *Madrid*, 130 Cal.App.4th at 452, 30 Cal.Rptr.3d 210; *Nat'l Rural Telecomms.*, 319 F.Supp.2d at 1087.

JHTM fails to state a claim for restitution because JHTM does not allege any facts that support a finding that JHTM has an ownership interest in property or funds in the County's possession. Instead, JHTM alleges that the County caused JHTM to incur payroll expenses and suffer a decline in the value of its business. (Countercl. ¶ 44.) Notably, JHTM seeks the same monetary relief in its UCL claim that it seeks in its breach of contract and negligence claims. JHTM is seeking damages, not restitution. *See Nat'l Rural Telecomms.*, 319 F.Supp.2d at 1091 (finding that plaintiff was seeking damages, not restitution, where plaintiff sought the same monetary recovery under its UCL and tort claims). Therefore, the facts alleged in JHTM's Counterclaim, taken as true, cannot support a claim for restitution. *See Madrid*, 130 Cal.App.4th at 445, 30 Cal.Rptr.3d 210 (sustaining demurrer to complaint where plaintiff "alleged no viable theory upon which he could obtain restitution"). The County's Motion

to Dismiss JHTM's Sixth Claim for Relief is granted, and JHTM's UCL claim is dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, Motion for More Definite Statement, and Motion to Strike, and Orange County's Motion to Dismiss JHTM's Second and Fifth Claims for Relief are denied. Orange County's Motion to Dismiss JHTM's Sixth Claim for Relief is granted. Plaintiffs are required to attach copies of the 30 Job Orders, the 42 Payment Requests, and the contracts that form the basis of their Complaints.

**IT IS SO ORDERED.**